UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY HOUSE,

                Plaintiff,

                                    Case No. 03-CV-74978

vs.

                                      HON. GEORGE CARAM STEEH

LA-Z-BOY, INC.,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This is a case in which plaintiff, a former long-term employee of the defendant, claims illegal employment discrimination on the basis of her age under federal and state law; on the basis of her gender under state law; and claims violations of the Family and Medical Leave Act, 29 U.S.C. § 2611 *et seq.* ("FMLA").  Before the court is defendant's motion for summary judgment on all of plaintiff's claims, which is granted in part, because plaintiff cannot establish her prima facie case of gender discrimination under Michigan law.  The motion is denied as to the remaining claims, because questions of material fact exist as to plaintiff's claims of age discrimination as well as those asserted under the FMLA.

## BACKGROUND

Beginning as a coding clerk in 1979, plaintiff Mary House worked for defendant La-Z-Boy in various administrative positions for approximately 25 years.  She moved

into the position of Corporate Logistics Manager in 1996, a job which was renamed Transportation Manager in 1999 following a corporate restructuring.  For approximately 18 years of House's tenure with La-Z-Boy, House worked under the supervision of Russell Matthews, defendant's Director of Logistics Operations.

Plaintiff alleges that her problems at La-Z-Boy began in approximately 2000. Then 57 years old and in charge of the Transportation Department, "second in command" to Russell Matthews as of her promotion to that position in 1996, she asserts that she began noticing that she was being treated differently than her approximately 40 year old counterpart Debbie Manger, head of the Customer Service Department. Plaintiff alleges she was being left out of meetings, subjected to different rules than Manger's department, and losing resources to Manger's department, and that Matthews was spending much of his time in closed door meetings with Manger.  Plaintiff points to deposition testimony of fellow employees to confirm that House and her employees were treated differently (i.e. not as well) as Manger and her subordinates.

House states that the resulting stress from the alleged disparate treatment caused her to be hospitalized for a brief period in August 2001.  Later that year, there was an announcement made by Matthews that Manger had been given the title of "Manager of Logistics," a new position which, allegedly, gave Manger (and bumped House from) the role of "second in command" to Matthews.  That position was a La-Z-Boy grade 25, compared to House's grade 22, and Manger is alleged to have received a 26.5% increase in pay, consequently earning more than House.

In House's 2001 performance review, Matthews wrote "Mary has always been a good employee and a hard worker.  She has had health-related problems this year that

2

may (sic) affected her and her departments performance."  <u>See</u> exhibit J to plaintiff's response brief.  Plaintiff asserts this was her first evaluation at La-Z-Boy to contain any negative information, and points to testimony of three employees who reported to House, who noted no such performance problems, to discredit Matthews' 2001 evaluation.  Plaintiff further points to tools available to supervisors to handle poor performance, such as warnings, third party evaluation, and coaching, none of which Matthews used in connection with plaintiff.

House alleges she then became convinced that Matthews was conducting a campaign leading to her termination, and asserts she began experiencing renewed health problems.  She took a leave of absence for disability, and was diagnosed by a Dr. Wasilewski with stress, anxiety, and depression.  House was out of the office from January 7, 2002 until March 18, 2002.  On March 13, 2002, House came to the office for a meeting with Matthews and Human Resources Manager Rouleau, when they told her that her position had changed due to a restructuring, that she would not be a manager anymore, and that her new position was Logistics Special Projects Coordinator, reporting to Manger.  Reportedly, Matthews told House at that meeting that the new position would be "less stressful" for her.  Matthews does not recall, but does not deny that he may have made such a statement.  <u>See</u> Matthews deposition, pp. 55.

Upon House's return to work March 18, 2002, she was moved from her former office to a cubicle.  House alleges Manger gave her a project to work on, but did not give her a job description or any specific job responsibilities, and did not respond to an April 25, 2002 email from House requesting clarification of her responsibilities.  House asserts she was underemployed in the new position, and was required to attend to

3

administrative details she had been relieved of in the managerial positions she previously held.

Plaintiff cites from testimony given by former fellow employees, to demonstrate the change in plaintiff's status, and to show her exclusion by Manger. She states that when she would ask Manger whether she should attend, for example, manager, customer service, and transportation meetings, she "was met with palpable hostility." She further states that Manger and Matthews were rarely available to meet with her, denied requests for assistance, on one occasion denied a vacation request, and gave her no guidance to perform her job. In short, she states, she was "being set up for failure." See House deposition, p. 184.

House asserts she was once again disabled for emotional reasons related to her work situation as of May 3, 2002, after which she never returned to work. At the time she left work, she was in the midst of work on a "Landed Freight" project, assigned by Matthews, concerning which defendant apparently asserts House was not meeting requirements. House contends she was never given a deadline for the project, and that the presentation was scheduled for the end of May, 2002. Ultimately, plaintiff asserts, Matthews and Manger used the work House had prepared as of May 3, 2002, and completed the project in time for the presentation. House states no one ever discussed the quantity or quality of her work for defendant during the year 2002, and that a negative evaluation prepared by Manger *after* House left on disability in May 2002 was done purely to "pave the way" for House's termination.

In October 2002, while on leave, House filed an age and gender discrimination complaint with the La-Z-Boy's Human Resources Department. The result of an alleged

4

insufficient investigation by Ms. Rouleau produced an "inconclusive" result regarding the alleged age discrimination, and Ms. Rouleau determined there had been no gender discrimination.  House's former Transportation Manager position was filled in late 2002, by a younger male employee, Jerry Smith, who was paid $50,000 in contrast to House's salary of $41,000.  House was "deactivated" as an employee with La-Z-Boy in January 2003, following which she filed a complaint with the Equal Employment Opportunity Commission, received her right to sue letter, and filed suit in this court.

STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See FDIC v. Alexander, 78 F.3d 1103, 1106 (6th Cir. 1996).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Kutrom Corp. v. City of Center Line, 979 F.2d 1171, 1174 (6th Cir. 1992).

The standard for determining whether summary judgment is appropriate is "`whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Winningham v. North Am. Resources Corp., 42 F.3d 981, 984 (6th Cir. 1994) (citing Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir. 1989)).  The evidence and all inferences therefrom must be construed in the light most favorable to

5

the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Enertech Elec., Inc. v. Mahoning County Comm'r</u>, 85 F.3d 257, 259 (6th Cir. 1996); <u>Wilson v. Stroh Co., Inc.</u>, 952 F.2d 942, 945 (6th Cir. 1992).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>see</u> <u>also</u> <u>Hartleip v. McNeilab, Inc.</u>, 83 F.3d 767, 774 (6th Cir. 1996).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> <u>also</u> <u>Adams v. Philip Morris, Inc.</u>, 67 F.3d 580, 583 (6th Cir. 1995).  Mere allegations or denials in the non-movant's pleadings will not meet this burden.  <u>Anderson</u>, 477 U.S. at 248.  Further, the nonmoving party cannot rest on its pleadings to avoid summary judgment.  It must support its claim with some probative evidence.  <u>Kraft v. United States</u>, 991 F.2d 292, 296 (6th Cir.), <u>cert.</u> <u>denied</u>, 510 U.S. 976 (1993).

ANALYSIS

I.  Plaintiff's FMLA Claims

Plaintiff brings two claims under the FMLA.  Her first claim asserts a violation of the FMLA because she was not put back into her Transportation Manager position, or an equivalent position, after her first significant medical leave.  The second asserts improper discrimination as a result of taking FMLA leave.

a.  FMLA violation

6

Under the FMLA,

any eligible employee who takes leave...shall be entitled, on return from such leave,

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
(B) to be restored to an equivalent position.

29 U.S.C. § 2614(a)(1).

Defendant states that the right to be restored to an equivalent position under the FMLA is not "absolute," and that, e.g., an employee who would have lost his or her job anyway is not entitled to reinstatement. Pharakhone v. Nissan North America, 324 F.3d 405, 407-08 (6th Cir. 2003). Defendant also cites to cases standing for the proposition that employees returning from FMLA leave are not entitled to reinstatement in their previous position when they had pre-existing performance problems. Smith v. Memorial Hosp. Corp., 302 F.3d 827 (8th Cir. 2002); Hubbard v. Blue Cross Blue Shield Assoc., 1 F.Supp.2d 867 (N.D. Ill. 1998). Defendant asserts that dismissal of the first FMLA claim is appropriate because it was entitled to return plaintiff to a different position than that she held previously, because plaintiff had such pre-existing performance problems.

Plaintiff cites to 29 C.F.R. § 825.216: "[a]n employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment," in arguing that the burden is on the employer to show that plaintiff would have been terminated–or here, demoted–regardless of the leave taken. Plaintiff also cites Hoge v. Honda of Am. Mfg., 384 F.3d 238 (6th Cir. 2004), and Arban v. West Publ'g Corp., 345 F.3d 390 (6th Cir. 2003). Plaintiff contends that defendant's explanation that House's reassignment was in the context of a "reorganization" is fabrication, as there was no "reorganization;" the

7

only position that changed was House's position.  The facts pointed out by plaintiff do support her contention that defendant's intention all along was to put a new person in the management role: defendant never replaced House as a "Special Projects Coordinator," but did ultimately fill the "Transportation Manager" position.  Plaintiff further contends that her 2001 evaluation does not support defendant's position that she would have been demoted had she not taken leave, as the evaluation overall was "good," defined on the form as "good solid performance: regularly meets job requirements."

Finally, plaintiff points to testimony of other employees of the Transportation Department, which support plaintiff's assertion that she was competently performing her job duties and tend to contradict certain testimony of Matthews concerning cited problems with plaintiff's performance.  Specifically, plaintiff asserts that Regina Harvell's testimony ("I never performed a performance review to (sic) an individual;" see Harvell deposition at p. 30) contradicts Matthew's testimony that Harvell had written a performance evaluation for another member of House's department, a job duty House was supposed to perform, and that Sonja DeCosta's testimony contradicts Matthew's testimony that DeCosta had been assigned by House to set rates, which would have been an assignment outside of DeCosta's authority.  See Sonja DeCosta Checker deposition, pp. 49-50.  This evidence, in combination with the alleged statement of Matthews that the new position would be "less stressful" for House, convinces the court that there is at least a question of material fact as to whether House would have been demoted had she not taken leave.  The court will not grant defendant's motion as to this claim.

8

b.  Illegal FMLA retaliation

Defendant asserts here that the claim should be dismissed in a situation where the plaintiff has not suffered an adverse employment action.  Defendant agrees that an employer is prohibited from retaliating against employees who exercise rights under the FMLA, but argues here that there was no constructive discharge, and that House's reassignment to a "lateral position with no change in benefits or pay" was not an adverse employment action.

Plaintiff responds to this argument by citing to Canitia v. Yellow Freight Systems, Inc., 903 F.2d 1064, 1066 (6th Cir. 1990), to demonstrate a prima facie case of illegal FMLA retaliation: 1) engaging in a protected activity; 2) the exercise of the protected civil rights was known to the employer; 3) after which adverse action is taken by defendant; 4) concerning which circumstances demonstrate the adverse action was due to the protected activity.  Plaintiff further cites to Gibson v. City of Louisville, 336 F.3d 511, 513 (6th Cir. 2003) to show that the employee needs only to prove that an illegal motive factored into the adverse employment action, not that it was the sole reason for the action.

Because plaintiff has proffered evidence to show she was removed from her management position, and thus demoted, following her FMLA leave, and as the court has found above that there is a question of material fact as to whether this demotion occurred as a result of House's FMLA leave, this claim will also survive defendant's motion.

II.  Plaintiff's Age Claims

Plaintiff's state claims of age discrimination, brought under Michigan's Elliott-Larsen Civil Rights Act, are analyzed in a similar manner to those brought by plaintiff under the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 ("ADEA"). See Plieth v. St. Raymond Church, 210 Mich.App. 568, 534 N.W.2d 164, 167 (1995), *appeal denied*, 451 Mich. 873, 549 N.W.2d 564 (1996). Under either statute, when there is no direct evidence of age discrimination proffered by the plaintiff, as in this case, courts apply the burden shifting approach outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish age discrimination. Under this approach, plaintiff first establishes her prima facie case of discrimination, by showing she is 1) a member of a protected class (i.e., over 40 years old); 2) that she suffered an adverse employment action; 3) that she was qualified for the position, and 4) that she received different treatment than a similarly situated person not in her protected class (i.e. Manger), who received the job/promotion. Anthony v. BTR Automotive Sealing Systems, Inc., 339 F.3d 506 (6th Cir. 2003). The fourth prong is satisfied when the plaintiff demonstrates that "a comparable non-protected person was treated better." Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir. 1992).

As plaintiff discusses in her brief, defendant only contests the fourth prong, arguing plaintiff "cannot establish that Manger was similarly situated" and that plaintiff and Manger had to be similar in "all relevant aspects of the employment relationship" (Plaintiff's response brief, p. 8). This is a correct description of the law set forth in the case of Ercegovich v. Goodyear Tire & Rubber Co., 154 F.2d 344 (6th Cir. 1998), relied upon by defendant. However, as plaintiff points out, defendant's statement that plaintiff has no evidence that "Manger and House were similarly situated in terms of their

10

performance and job histories," is not a correct application of the law to this case.  As plaintiff argues, these issues relate to Manger's and House's *qualification* for the job, not to their similar situations.  Here, Manger and House were both La-Z-Boy managers, who reported to Matthews, and who were–or should have been–subject to the same evaluation policy and rules.  Plaintiff points out, in fact, that Matthews has conceded he considered both Manger and House for the position of Manager of Logistics.  See Matthews deposition, p. 148-50.  These similarities present at least a question of material fact as to whether the fourth prong has been satisfied by the plaintiff.

After satisfaction of the prima facie burden by the plaintiff, under McDonnell Douglas, the burden of production is shifted to the defendant, to establish it had a legitimate nondiscriminatory reason for the adverse employment action.  If such a reason is established by the defendant, the plaintiff then must produce evidence to demonstrate that the employer's explanation is merely pretext for intentional age discrimination.  Barnes v. GenCorp Inc., 896 F.2d 1457, 1464.  In this case, defendant points to the following as its reasons for the employment action: Matthews states that Manger had a "proven track record in management with the Company," whereas House was a "good but marginal employee," citing the Matthews deposition at 187.  Defendant also argues Matthews has testified that "he had concerns regarding House's continued role in management at La-Z-Boy due to growing problems in her own department," and that Matthews contrarily "credited Manger for 'turning around' the Logistics Service Division," citing the Matthews deposition, pp. 290, 283-84.

Plaintiff asserts this discussion by defendant addresses only her complaint related to the promotion of Manger, and ignores her other claims of maltreatment, and

that even as to the promotion of Manger over House, gives only subjective opinions

concerning the quality of her work.  On this issue, defendant contends that the business

judgment of an employer cannot be used as a means of establishing pretext, citing

Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 550 (6th Cir. 2004).

Concerning the "business judgment" immunity asserted by defendant, which plaintiff

disputes, one of the very cases relied on by defendant, Hartsel v. Keys, 87 F.3d 795,

contains the following statement:

> summary judgment is not appropriate every time an employer offers this
> "business judgment" rationale.  "The distinction lies between a poor
> business decision and a reason manufactured to avoid liability.  Thus,
> facts may exist from which a reasonable jury could conclude that the
> employer's 'business decision' was so lacking in merit as to call into
> question its genuineness."

Id. at 800 (quoting Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir.

1988).  Plaintiff also quotes from Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.

133, 149 (2000) ("a prima facie case and sufficient evidence to reject the employer's

explanation may permit a finding of liability...."), and St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 511 (1993) ("[r]ejection of the defendant's proffered reasons will permit the

trier of fact to infer the ultimate fact of intentional discrimination.")  Plaintiff shows that

House had vastly more experience than Manger in the logistics area of La-Z-Boy, and

that there were complaints concerning Manger's supervisory capability.  Plaintiff has

extensively cited to her own deposition testimony as well as other employees to dispute

Matthews' alleged objective basis for the adverse employment actions complained of.

Furthermore, plaintiff asserts that Rouleau, manager of Human Resources, a newly

hired manager in 2001, was younger than plaintiff, was given a grade over plaintiff's and

12

earned well over plaintiff's salary.  Plaintiff also points to the observations of Ms. Kehres concerning the treatment of older workers at La-Z-Boy (including "Manger told me that I needed to do more to make the environment more fun for the younger employees..."). See Declaration of Betty Kehres, ¶ 7.  For these reasons, the court finds there is a question of material fact as to whether Matthews' explanation for why he chose Manger over House was pretextual.

III.  Plaintiff's Gender Claim

To establish her *prima facie* case of gender discrimination under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), the plaintiff must proffer evidence of four elements: (1) that she belongs to a protected class; (2) that an adverse employment action was suffered; (3) that she was qualified; and (4) the adverse employment action occurred in a context which gives rise to an inference of unlawful discrimination. Sniecinski v. Blue Cross & Blue Shield, 469 Mich. 124, 666 N.W.2d 186, 193 (2003).  It is the court's determination that plaintiff cannot do that with this claim.

Plaintiff contends that she demonstrates a *prima facie* case of gender discrimination where she was consistently paid less than her male counterparts, and was ultimately replaced by a man whose salary was substantially higher than hers had been.  The adverse employment action complained of in this action, however, was the chain of events that occurred beginning when House received her new assignment Logistics Special Projects Coordinator.  Nowhere does House assert that the adverse employment action complained of was being assigned a low salary, and in fact the court notes the obvious fact that Manger, who is alleged to have received House's job, is a woman.  This fact is the critical component of plaintiff's complaint.

13

Furthermore, if the complaint could be construed to complain of a salary differential as an adverse employment action taken against House, because she was female, the court is in agreement that the applicable three year statute of limitations bars the claim as to Bob Martin, as argued by defendant. Bob Martin was an employee who originally held the position of Logistics Special Services Manager, but who Matthews testified was demoted to a position under the management of plaintiff in 1999 after spreading rumors and making "improper" remarks to a female employee. See Matthews deposition, pp. 212-13. Although Martin's pay was decreased in the new position, he still earned more than plaintiff. Martin was later terminated. Defendant successfully asserts that under ELCRA's three year statute of limitations, plaintiff's knowledge of the pay differential between Martin more than three years prior to filing this lawsuit bars plaintiff's cause of action as to the differential in pay between plaintiff and Martin.

Concerning plaintiff's argument that she has established a gender discrimination claim by proffering evidence that her ultimate replacement, Jerry Smith, was paid $50,000 in comparison to plaintiff's $41,000, and he was eligible for bonuses, whereas she had not been, this likewise does not convince the court that she has made a *prima facie* case of gender discrimination. The adverse employment action complained of in this action, i.e. what happened to the plaintiff following her leaves of absence, and specifically that another woman took over her job duties, did not arise in a context which gives rise to an inference of unlawful discrimination on the basis of gender. Moreover, if the court were taking the next step, and applying the McDonnell Douglas burden shifting approach to this claim, defendant has proffered convincing non-discriminatory reasons

14

for the $9,000 pay differential between plaintiff and Smith, who had apparently completed education House had not, and who was hired from the outside many months after House's separation from La-Z-Boy.  The court will grant defendant's motion for summary judgment as to this claim.

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is hereby DENIED IN PART and GRANTED IN PART.

IT IS SO ORDERED.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  June 24, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 24, 2005, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk

15